IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**MARCUS SEARS**                                                                                     **PLAINTIFF**

v.                                                          **Civil Action No. 5:14cv65-DCB-JCG**

**F. SHAW,** *Warden* **et al.**                                                                     **DEFENDANTS**

## REPORT AND RECOMMENDATIONS

BEFORE THE COURT is the Motion for Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies [37], filed by Defendants Warden Frank Shaw, Captain Mary Groom, Unit Manager Erika Perkins, and Major Gabriel Walker. Defendants Christopher Epps and Archie Longley have joined in the Motion [40]. This suit was filed *pro se* by Marcus Sears, a postconviction inmate in the custody of the Mississippi Department of Corrections ("MDOC"), who at the times relevant to this suit was housed at the Wilkinson County Correctional Facility in Woodville, Mississippi ("WCCF"). Defendants Shaw, Groom, Perkins, and Walker were employed as correctional staff at WCCF during the relevant time period. Epps was the Commissioner of MDOC, and Longley was MDOC's Deputy Commissioner for Institutions.

Sears filed this action under 42 U.S.C. § 1983, alleging that his constitutional rights were violated because Defendants failed to protect him from harm from another inmate who stabbed him. It is Sears' position that he should have been in protective custody while housed at WCCF, which would have prevented the stabbing. Sears claims he verbally requested protective custody during processing

when he arrived at WCCF and that he should have automatically been placed in protective custody at WCCF because he was in protective custody at a previous facility where he was housed. Sears also complains that he was segregated after the stabbing, while the other inmate involved was not segregated. Sears alleges that he was wrongfully issued a rule violation following the stabbing and that he was not afforded a hearing in connection with the rule violation.

An omnibus hearing, which also served as a *Spears*[1] hearing, was held on May 12, 2015. Defendants maintain that Sears failed to exhaust his administrative remedies before filing suit in federal court to the extent that Sears is claiming a failure to protect. Sears was ordered to respond to Defendants' Motion for Summary Judgment, and in response, he filed a Motion for Summary Judgment [44]. Sears has also filed a Motion for Hearing [41], citing "newly discovered evidence." The undersigned Magistrate Judge submits this Report and Recommendations to United States District Judge David C. Bramlette, III, and recommends that Defendants' Motion for Summary Judgment [37] be granted, Plaintiff's Motion for Hearing [41] be denied, and Plaintiff's Motion for Summary Judgment [44] be denied.

## I. BACKGROUND

On March 22, 2014, Sears was assaulted and stabbed several times by offender Kerwin Franklin during an altercation between the two over what program

---

[1]*Spears. v. McCotter,* 766 F.2d 179 (5th Cir. 1985).

to watch on the television.  Sears and Franklin were in the day room of their general population housing unit at the time of the altercation.  A nine-inch sharpened instrument was later recovered from Franklin's cell.  Sears maintained that it was Franklin's weapon.  Franklin maintained that Sears had the weapon, began to assault Franklin, and Franklin took the weapon from Sears to defend himself.  Sears was medically evaluated and transported to a hospital with several non-life-threatening stab wounds.  Franklin was escorted to medical to be evaluated for injuries to his hand.  Sears and Franklin received a rule violation.  Sears was placed in segregation, and Franklin remained in his assigned housing unit in general population.

On April 17, 2014, Sears submitted a request for administrative remedy that provided [all sic in original]:

> This is a request for administrative remedy concerning an issue that happened on March 27, 2014,[2] which resulted in me being punished by restricting me from my right (privileges) that I have as an inmate of MDOC.  I was (quote) guilty of . . . RVR.  I was taken to an emergency room after been stabbed 9x's Pictures were taken.  Then placed in short term segregation where I refused to sign the RVR.  If it were not for the canteen lady notifying me that I had been placed on restriction than I wouldn't have never known. . . . The principle of the matter is I could have lost my spirit in prison and to be brought back to reality that I am still being oppressed and segregated which seems as if I've been kidnapped by a date rape drug.  Two wrongs:
>
> 1.  The inmate that stabbed me is still housed in Foxtrot neither he was segregated.

---

[2]The date of the stabbing was March 22, 2014.

> 2. Found guilty of an RVR which I refused to sign and were not given a hearing.

(Req. for Admin. Rem. [37-1] at p. 4).

Sears' request for administrative remedy review was accepted, and a First Step Response was issued by Major Walker on June 2, 2014. Major Walker wrote:

> In response to your concern you have not provided enough information to support your claim. I can't determine your request. You received proper disciplinary actions which relates to your restriction. I find this matter resolved.

(First Step Resp. [37-1] at p. 5).

Sears signed the First Step Response on June 6, 2014, checking that he "was not satisfied with this response and wish[ed] to proceed to Step Two." *Id.* The reason Sears provided was: "In dis matter to determined I was wrongfully housed and stabbed down by gang affiliation." *Id.*

On July 7, 2014, a Second Step Response signed by Warden Shaw was issued, providing:

> In response to your ARP claim in reference to you stating that the inmate who stabbed you is still housed in Foxtrot and was not segregated, your claim has been investigated. According to the incident detail you were placed in segregation because you had been assaulted by an offender with a sharpened instrument who you had an altercation with over the television. You were taken to medical to be evaluated whereas you needed to be transported to Field Memorial Hospital with no life threatening injuries. Also, you and offender Kerwin Franklin received a rule violation for your actions. According to the Disciplinary policy, restriction of all privileges is one of the sanction[s] for a category-B violation. I consider this matter resolved at this level.

(Sec. Step Resp. [37-1] at p. 10).

Sears signed the Second Step Response on July 10, 2014, and filed this suit on July 28, 2014. Sears' Complaint states his claim as follows:

> I was denied protective custody. MDOC is involved because they are the officers in charge to make sure no bodily harm is done to me. When I left Greene County I red tagged a gang member and I requested protective custody when I entered Wilkinson County Correctional Facility. Also after I was stabbed down by the same gang member brother he didn't get locked down. I was locked down (cruel and unusual punishment). Also, before I left Rankin County, I was placed on protective custody and never signed a waiver to be relieved from protective custody.

(Compl. [1] at p. 4).

In response to Court's Order to clarify his claims, Sears stated that he was alleging "a failure to protect me (Plaintiff) from stabbing." (Pl.'s Resp. [7] at p. 1). At the omnibus hearing, Sears indicated that by "brother," he meant Franklin was a member of the same gang as an offender who assaulted Sears while he was housed at the South Mississippi Correctional Institution in Leakesville, Mississippi ("SMCI"). Sears was also involved in a physical altercation with an alleged gang member while housed at Central Mississippi Correctional Facility, in Pearl, Mississippi ("CMCF"). According to Sears, he "beefs" with both the "Royals" and the "Gangsters."

Sears submitted proof that, while at CMCF, he was placed in administrative segregation pending protective custody after a fight between him and another offender on July 26, 2012. (CMCF Report [7] at p. 7). Sears was later moved to

5

SMCI and then to WCCF. Sears admits that he was not in protective custody during the time he was housed at SMCI. According to Sears, he was segregated and in a glass cell during the transport from SMCI to WCCF because one of the offenders who had previously assaulted him and who Sears had red-tagged was also on the bus and being moved to WCCF. Sears was housed in a separate unit from this offender at WCCF.

It is Sears' position that because he was placed in protective custody in July 2012 while at CMCF and "never wrote a statement to be removed from protective custody," the WCCF Defendants, Epps, and Longley "failed to protect me (Marcus Sears) from personal injury by not adhering to my cry for protective custody, not taking drastic measures as to see if I needed to be placed on protective custody or if I were already on protective custody." (Pl.'s Resp. [7] at pp. 3-4).

Sears maintains that he verbally requested protective custody to Unit Manager Perkins upon his arrival at WCCF during processing. According to Sears, he told Perkins that he recommended that he be placed in protective custody because he feared for his life. Sears identified no specific threats or even a concern that he should not be housed with members of certain gangs. Sears allegedly told Perkins that his life was in danger, but by Sears' own admission, he did not tell her why.

Sears seeks "the removal of the RVR between Mr. Kerwin Franklin to be placed back on protective custody and also $30,000 for physical and emotional damage as well as pain and suffering . . . ." *Id.* at p. 4.

## II. ANALYSIS

A.  The Prison Litigation Reform Act

The Prison Litigation Reform Act of 1996 ("PLRA"), 28 U.S.C. § 1915, applies to prisoners proceeding *in forma pauperis* in this Court. The PLRA provides in part that "the Court shall dismiss the case at any time if the court determines that . . . the action . . . (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see* 28 U.S.C. § 1915(e)(2)(B).[3] This framework "accords judge not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez,* 504 U.S. 25, 32 (1992)(quotation omitted); *Schultea v. Wood,* 47 F.3d 1427, 1434 (5th Cir. 1995).

B.  Standard of Review

Summary judgment is mandated against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party has the burden of proof at trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A motion for summary judgment

---

[3] If a prisoner complaint is dismissed on grounds that it is frivolous, malicious, or fails to state a claim, the prisoner may be assessed a strike. 28 U.S.C. § 1915(g). If a prisoner receives three strikes, he may no longer proceed *in forma pauperis* in a civil suit unless he is in imminent danger of serious physical injury. *Id.*

7

shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a summary judgment motion, the Court must construe "all facts and inferences in the light most favorable to the nonmoving party." *McFaul v. Valenzuela,* 684 F.3d 564, 571 (5th Cir. 2012).

C.   Sears' Failure to Protect Claim

    1.   Exhaustion of Administrative Remedies

       a. The PLRA's Exhaustion Requirement

"Prisoner litigation continues to 'account for an outsized share of filings' in federal district courts." *Jones v. Bock,* 549 U.S. 199, 203 (2007)(citing *Woodford v. Ngo,* 548 U.S. 81, 84 (2006)). "Most of these cases have no merit; many are frivolous. Our legal system, however, remains committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law. The challenge lies in ensuring that the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit. " *Id.*

A centerpiece of the PLRA's effort to "reduce the quantity and improve the quality of prisoner suits" is an "invigorated" exhaustion provision. *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). The PLRA provides:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

"Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford,* 548 U.S. at 84. "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93 (quoting *Porter,* 534 U.S. at 525).[4]

Proper exhaustion is required. A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* at 83-84:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Id.* at 95.

Exhaustion "is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time." *Dillon v. Rogers,* 596 F.3d 260, 272 (5th Cir. 2010). "[J]udges may resolve factual disputes

---

[4]"In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to federal court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Porter,* 534 U.S. at 525 (internal citations and quotations omitted).

concerning exhaustion without the participation of a jury." *Id.*

### b. MDOC's Administrative Remedy Program

The Mississippi Code grants MDOC the authority to adopt an administrative review procedure at each of its correctional facilities. Miss. Code Ann. § 47-5-801. MDOC has implemented an Administrative Remedy Program ("ARP") through which prisoners may seek formal review of a complaint or grievance relating to any aspect of their incarceration. *See* MDOC Inmate Handbook, Ch. VIII, Administrative Remedy Program.[5] Effective September 19, 2010, the ARP is a two-step process. *Threadgill v. Moore,* No. 3:10cv378-TSL-MTP, 2011 WL 4388832, *3 n.6 (S.D. Miss. July 25, 2011).

Inmates are required to initially submit their grievances in writing to the prison's legal claims adjudicator within thirty days of the incident. *Howard v. Epps,* No. 5:12cv61-KS-MTP, 2013 WL 2367880, *2 (S.D. Miss. May 29, 2013). The adjudicator screens the grievance and determines whether to accept it into the ARP process. *Id.* If accepted, the grievance is forwarded to the appropriate official who then issues a First Step Response to the complaining inmate. *Id.* If the inmate is unsatisfied with the First Step Response, he may continue to the second step by completing an appropriate ARP form and sending it to the legal claims adjudicator. *Id.* The Superintendent, Warden, or Community Corrections Director will issue a final ruling, or Second Step Response. *Id.* If the inmate is unsatisfied with the

---

[5]http://www.mdoc.ms.gov/Inmate-Info/Pages/Inmate-Handbook.aspx

Second Step Response, he may file suit in state or federal court. *Id.*

        c. <u>Time and Opportunity to Address the Problem Prior to Suit</u>

"Section 1997e(a) does not say how specific a prisoner's administrative grievances must be," but the Fifth Circuit has offered guidance. *Johnson v. Johnson,* 385 F.3d 503, 516 (5th Cir. 2004). A prisoner must give prison officials "fair notice" of the problem that will later form the basis of the prisoner's suit. *Id.* at 516-17. The amount of information that a prisoner must provide depends on the type of problem about which the inmate is complaining. *Id.* at 517.

> Beyond those practical considerations, the prison system's own rules regarding grievances provide both inmates and the courts with more specific guidance. Since prisoners are generally required to follow the procedures adopted by the state prison system, the specificity requirement should be interpreted in light of the grievance rules of the particular prison system, here the [MDOC]."

*Id.* "Thus, in deciding whether the grievance gives officials an opportunity to address the problem, [the Court] should consider whether the grievance provides the type of information that the [MDOC] rules request." *Id.*

MDOC's ARP procedures advised Sears that he "should present as many facts as possible to answer all the questions who, what, when, where, and how concerning the incident." *See* MDOC Inmate Handbook, Ch. VIII, Administrative Remedy Program.[6] Sears was not required to present specific legal theories in his grievances, but he was required to provide facts and to alert prison officials of the

---

      [6]http://www.mdoc.ms.gov/Inmate-Info/Pages/Inmate-Handbook.aspx

problem in order to give them an opportunity to address it.

In his April 17, 2014, initial request for administrative remedy review, Sears complained that he had been placed in segregation with restricted privileges, while Franklin was not placed in segregation. Sears alleged that he had not been given a hearing in connection with the issuance of the rule violation. The grievance and facts provided by Sears concerned Sears' complaints regarding what occurred after the assault. The grievance did not provide notice that Sears was claiming that Defendants failed to protect him by allegedly denying him protective custody before the assault. The grievance mentions no safety concerns at all.

Major Walker advised Sears in the First Step Response that Sears had received proper disciplinary action. Sears' reason for proceeding to the Second Step was "In dis matter to determined I was wrongfully housed and stabbed down by gang affiliation." (First Step Resp. [37-1] at p. 5). This unadorned statement also did not convey enough information to prison officials to alert them that Sears was claiming that he should have been in protective custody, which would have prevented the altercation with Franklin.

Sears did not properly exhaust his failure to protect claim before raising it in this federal lawsuit. The claim must be dismissed. *See Woodford,* 548 U.S. at 88. "District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. . . . Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v. Seal,* 702 F.3d 785, 788 (5th Cir. 2012).

2.   Failure to State a Claim

Although dismissal of Sears' failure to protect claim is mandatory based upon his failure to exhaust administrative remedies, Sears has also stated no claim. Inmates have neither a protectable property or liberty interest in any particular housing assignment or custodial classification, either under the United States Constitution or under Mississippi law. *Hewitt v. Helms,* 459 U.S. 460, 468 (1983); *Meachum v. Fano,* 427 U.S. 215, 224 (1976); *Neals v. Norwood,* 59 F.3d 530, 533 (5th Cir. 1995); *Wilson v. Budney,* 976 F.2d 957, 958 (5th Cir. 1992); *McCord v. Maggio,* 910 F.2d 1248, 1250 (5th Cir. 1990). An inmate's disagreement with a classification is insufficient to establish a constitutional violation. *Neals,* 59 F.3d at 533. Prisoner classification is a matter squarely within the "broad discretion" of prison officials, "free from judicial intervention" except in extreme circumstances. *McCord,* 910 F.2d at 1250.

"Under Mississippi state law, the classification of inmates is the responsibility of the Department of Corrections, and an inmate has no right to a particular classification. Miss. Code Ann. §§ 47-5-99 to 47-5-103." *Tubwell v. Griffith,* 742 F.2d 250, 253 (5th Cir. 1984). Sears submitted as an exhibit what appear to be MDOC standards for protective custody. Doc. [7] at pp. 8-9. These do not support Sears' position that removal from protective custody after the incident at CMCF required his consent. Classification hearing officers are responsible for assigning a classification to each offender, and the designee or designees of the

MDOC commissioner approve or disapprove each classification. Miss. Code Ann. § 47-5-103. Offenders do not dictate their classification, as Sears alleges.

In order to prevail on a failure to protect claim under the Eighth Amendment, Sears would have to show that he was "incarcerated under conditions posing a substantial risk of serious harm" and that the defendants' state of mind was one of "deliberate indifference" to his health or safety. *Farmer v. Brennan,* 114 S. Ct. 1970, 1976 (1994). Defendants are deliberately indifferent if they were both "aware of the facts from which the inference could be drawn that a substantial risk of harm exists" and they drew the inference. *Id.* at 1979. The official's knowledge of the risk can be proven through circumstantial evidence, such as by showing that the risk was so obvious that the official must have known about it. *Id.* at 1970.

Sears did not know Franklin. Sears did not identify Franklin as a threat to any prison officials. Sears did not red-tag Franklin. Sears had used the "red tag" procedure in the past to identify inmates whom he believed to be a threat to him. WCCF did not house Sears with offenders whom Sears had red-tagged. WCCF specifically did not house Sears with the offender who was transported to WCCF with Sears, whom Sears had red-tagged. Sears described the incident with Franklin as unexpected. Sears acknowledges that he identified no specific threat to Perkins or even a concern regarding being housed with members of certain gangs. Under the facts as alleged by Sears, neither Perkins nor the other Defendants had prior knowledge that Franklin was a threat to Sears or were aware of facts that would have allowed them to conclude that a substantial risk of serious harm existed

by housing Franklin and Sears in the same unit.  No constitutional violation can be found under the facts as alleged by Sears.  A similar claim was dismissed for failure to state a claim in *Morgan v. Corrs. Corp. of Am.,* No. 2:09cv97-B-A, 2009 WL 1873652 (N.D. Miss. June 26, 2009).

### III.  RECOMMENDATIONS

It is recommended that Defendants' Motion for Summary Judgment [37] be granted and Sears' Motion for Summary Judgment [44] be denied.  Sears has offered no new evidence, and his Motion for Hearing [41] should also be denied.

This Report and Recommendations does not recommend a full dismissal of Sears' case at this time.  It appears that Sears exhausted the ARP process as to certain claims.  A dispositive motions deadline will be set to allow the parties an opportunity to address Sears' remaining claims.

### IV.  NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

> After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge.  Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U.Civ.R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects.  The District Judge need not consider

frivolous, conclusive, or general objections.  A party who fails to file written objections to the proposed findings, conclusions, and recommendations shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Automobile Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

    **SIGNED,** this the 1st day of February, 2016.

                                           *s/ John C. Gargiulo*
                                           JOHN C. GARGIULO
                                           UNITED STATES MAGISTRATE JUDGE